UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARMAND SKRINE,

                           Petitioner,

        -against-

CHRISTOPHER COLLINS,

                      Respondent.

No. 23-cv-04575-DG

# MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

MICHAEL E. McMAHON
District Attorney Richmond County
Attorney for Respondent
130 Stuyvesant Place
Staten Island, New York 10301
Thomas.Litsky@rcda.nyc.gov
(phone) 718-556-7120
Thomas.Litsky@rcda.nyc.gov

THOMAS B. LITSKY
Assistant District Attorney
  Of Counsel

Dated: December 19, 2023

Table of Contents

INTRODUCTION ................................................... 1

ARGUMENT ...................................................... 2

        **THE STATE COURT'S REJECTION OF PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW.**

CONCLUSION ..................................................... 30

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARMAND SKRINE,

                                  Petitioner,

               -against-

CHRISTOPHER COLLINS,

                                  Respondent.

**No. 23-cv-04575-DG**

## **INTRODUCTION**

Petitioner Armand Skrine petitions this Court for a writ of habeas corpus seeking his release from custody grounded in a judgment of the Supreme Court of the State of New York, Richmond County (Collini, J., on suppression motion; Rooney, J., at trial and sentence), rendered July 29, 2014. By that judgment, petitioner was convicted, following a jury trial, of Murder in the Second Degree [N.Y. Penal Law § 125.25(1)] and Criminal Possession of a Weapon in the Second Degree [N.Y. Penal Law § 265.03(3)]. He was sentenced to concurrent indeterminate and determinate terms of imprisonment of 25 years to life, and 10 years, the later to be followed by 2½ years of post-release supervision. Petitioner is presently serving his sentence.

1

The outline of the underlying facts contained in the accompanying declaration is incorporated herein by reference and will be repeated only to the extent necessary to respond to the petition.

## ARGUMENT

**THE STATE COURT'S REJECTION OF PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW.**

Petitioner claims entitlement to federal habeas corpus relief on the ground of ineffective assistance of counsel. In support of this claim, petitioner argues that counsel was ineffective because she: was unprepared; did not object to Criminalist Elaine Wong's testimony respecting DNA on confrontation grounds; did not object to testimony concerning the "second mask" with petitioner's DNA; and did not object to the introduction of photographs of suppressed clothing, clothing that defendant was wearing at the time of his arrest. The Appellate Division rejected petitioner's ineffective assistant of counsel claim on the merits, That decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

## A.

As with many issues on federal habeas corpus review, petitioner faces a double burden. He must meet not only the narrow standard of review under AEDPA but also the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a federal claim for the ineffectiveness of trial counsel, a petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694, 698. As to the first <u>Strickland</u> prong, counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 686, 689-90. The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation omitted). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen*, 563 U.S. at 196 (citation

omitted). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington*, 562 U.S. at 105 (citation omitted). As to the second "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. 86. The performance component need not be addressed first. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The United States Supreme Court has observed that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotations omitted). Thus, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," the court is required to "use a 'doubly deferential' standard of review that vies both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). And when applying AEDPA deference to an ineffective assistance of counsel claim, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold."

*Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

New York has developed a different legal standard for ineffective assistance of counsel claims. Under New York law, an attorney provides ineffective assistance of counsel when, given all the circumstances, that attorney fails to provide "meaningful representation" to his or her client. *People v. Baldi*, 54 N.Y.2d 137, 147 (1981) ("So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met."). The Baldi standard differs from the *Strickland* standard in that, under Baldi's "meaningful representation" analysis, "the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case . . . [t]hus, whether defendant would have been acquitted of the charges but for counsel's errors is relevant, but not dispositive . . ." *People v. Benevento*, 91 N.Y.2d 708, 714 (1998) (internal citations omitted). The Second Circuit has held that the Baldi standard is not contrary to *Airframe Sys. v. Raytheon Co.*, 601 F.3d at 124-26.

Here, none of petitioner's arguments thread the Strickland-AEDPA needle.

**B.**

Petitioner received the benefit of thorough and impassioned representation, by an attorney well versed in the intricacies of New York criminal law. Petitioner's claim that counsel was unprepared is unpersuasive.

To be sure, that attorney was faced with significant evidence of her client's guilt. Because the argument and first shot occurred inside David Williams's apartment, the killer was very likely somebody he knew (*see* Smith 167-69). In fact, as neighbor Janet Smith testified, voices she had heard coming from the murder apartment had been conversational, plainly reflecting that whoever shot Williams had been known to Williams. The trial evidence also reflected that Williams and petitioner had been college roommates and remained in touch after their graduation (Hunt 243, 245). Further, since a very tall man, covered from head to toe in ski equipment and carrying a duffel bag -- a description uncannily matching petitioner, who was known to carry a similar duffel bag (Hunt 246) -- had visited Williams's apartment building at the time of the homicide, the jury could infer that the killer was very likely petitioner  (*see* Loiseau 112-15, 123).

Petitioner's ties to the scene were virtually innumerable. He rode the ferry to Staten Island that morning (*see* Casiano 162, Vitale 215, People's Exh. 168, 170) and, after the murder, was spotted wandering just two blocks from the scene (Anderson 189). A duffel bag recovered from neighboring woods contained an AK-

47 missing two bullets – the same number of shots overheard by Williams's neighbor, and the same number evidenced by deformed bullets and impact markings at the scene (Steneck 34, 51-57, 66-69; Smith 167-69).

DNA that matched petitioner's was recovered from a ski mask within the duffel bag (Wong 343), and a coat within the bag was the same one Jean Loiseau had spotted on the camouflaged man standing in the lobby (*see* Loiseau 115). The duffel bag itself matched the bag carried by camouflaged man (*see* Loiseau 116), as well as the bag carried by defendant during his ferry travels (*see* Patterson 225; People's Exh. 171). And, Williams's fiancée remembered petitioner having carried around that bag (*see* Hunt 246).

In other words, apart from the general notion that the evidence of the killer's identity would be challenged – and that Williams's regular access to the apartment would be helpful – an effective defense theory would largely be contingent on the outcome of cross-examination: on whatever discrepancies, weaknesses, and doubts emerged from prodding at witness testimony. To be sure, waiving an opening statement is not the only way for an attorney to keep those theoretical options open. But counsel's initial desire to defer her opening until she heard the People's case – a

request eventually denied by the court, as memorialized in counsel's motion to set aside the verdict – was understandable.[1]

Here, counsel's performance evinced overall competence. The theme of her summation was the overwhelming circumstantiality of the People's case. As she pointed out, it relied on inferences about the manner in which the victim was shot (T. 398-99),[2] inferences about the identity of the ferry rider and the man standing in the lobby (T. 399), an inference that one commonly available mask is the same as another (T. 399, 400), an inference that one commonly available duffel bag is the same as another (T. 406)), and the inference that a gun was used by the same person whose DNA was recovered from a neighboring mask (T. 398, 400).

"They haven't even proved the last time somebody wore that ski mask," counsel told the jury. "You heard Ms. Wong testify that [defendant's] DNA could have been on the mask for over a year. [And the clothes] could have also belonged to Lonney Walker," a neighbor who used to date Jacklyn Nicole Hunt's relative.  "We

---

[1] "[T]he decision whether to make an opening  statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel." *Marcial v. Ercole* , No. 08-CV-06188, 2010 U.S. Dist. LEXIS 85261,  at *9-10 (W.D.N.Y. Aug. 19, 2010) (citing *United States v. Nersesian*,  824  N.Y.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 958 (1987) (citations  omitted). "It is common knowledge that defense counsel quite often waive openings as a simple matter of trial strategy." *United States v. Salovitz*, 701  F.2d 17,  20-21(2d Cir. 1983) (citations omitted). *See Perez v. Greiner*, No. 02-CV-1436, 2003 U.S. Dist. LEXIS 18995, at *32 (S.D.N.Y. 2003) (finding no prejudice under *Strickland* for counsel's "failure" to give opening statement, as opening statement by trial does not constitute evidence and would not have refuted any of the evidence presented against petitioner).

[2] Parenthetical references "T.___," and "H.___" refer to parges in the trial and hearing transcripts, respectively.

know he's 6'6" and over 220 pounds. And in Ms. Hunt's own words, she said he was a big guy. Those could have been his clothes. We know he's been in the apartment" – and that defendant's own visits to that apartment raised the possibility of DNA contamination (T. 401). This was a thoughtful factual argument.

Counsel also challenged the credibility of Detective Anderson's account of defendant wandering on the service road (T. 402), the likelihood that an AK-47 would have slipped past counterterrorism officers at the ferry terminal (T. 404), a description of the "same" duffel bag by different witnesses (T. 406), a description of the "same" jeans by different witnesses (T. 412), and the "sense[less]" fact that the ski mask with defendant's DNA went unmentioned in Detective Steneck's log of recovered items (T. 411).

Although petitioner brands as "incoherent" counsel's reference to the on-scene presence of neighbor Samuel Nelson's fingerprint (*see* Pet. Memo at p. 28) its purpose was clear: to challenge the thoroughness and credibility of the detective work that settled on defendant as the shooter (see T. 409 ["That's ridiculous. … Not concerned that there is a palm print right on the wall outside … where the deceased was laying? … But he's ruled out because he's a resident of the building. Some investigation."]).  This is the very same reason why counsel excoriated investigators for "d[oing] nothing" to test the bite mark on Williams's back (*see* T. 413), and why she underscored that no one had noticed the bullet in the hallway before Detective

Steneck had arrived (*see* T. 407). At no point did counsel abandon her theory that Lonney Walker might have committed the crime (*see* Pet. Memo at p. 38).

Counsel's vigorous closing argument arrived amid – and in some ways was made possible by – other displays of alertness and fluency in the relevant facts and law. Counsel knew to ask for an adverse inference concerning missing property (T. 90). She moved for a trial order of dismissal (T. 388). She objected to numerous aspects of the People's use of Microsoft PowerPoint during summation (T. 418). Another objection resulted in the dismissal of a count of the indictment (T. 460).

Counsel anticipated a possible prosecution theory of a robbery, based on a coincidence in quantities of cash carried by victim and defendant (T. 98). She honed in on arguable discrepancies in the descriptions of defendant's duffel bag and jeans, which helped to challenge the proof that Loiseau's masked man had been defendant (Loiseau 115). She successfully blocked Detective Edward Patterson from mentioning defendant's official height and weight, even though the suppression decision had not expressly ruled out pedigree information (Patterson 232). She repeatedly teased out omissions and discrepancies between witnesses and their associated DD5 reports, from Janet Smith to Jaclyn Nicole Hunt. Her cross-examination of Loiseau, Smith, and Hunt were especially thorough, and her questions to Detective James Clontz suggested a longstanding familiarity with guns and ballistics. Finally, of course, the theory that Lonney Walker had killed David

Williams was only possible because of counsel's cross-examination of Williams's fiancée (Hunt 264).

For her work, counsel can reasonably be credited with the jury's four-day deliberation, over an extremely strong circumstantial case. Her strategy was cogent, and it was backed up by a thorough understanding of the record, as well as the characters, locations, tools, and documents underlying the facts of the case.

## C.

Petitioner's contends that his trial counsel was ineffective for failing to object to the admissibility of the second mask. i.e., the mask that was packaged within the pocket of the long coat. The Appellate Division denial of that claim was not contrary to, or an unreasonable application of *Strickland*.

The evidence at trial established that in the wooded area between 195 Steuben Street, where David Williams was murdered, and the Staten Island Expressway service road, Detective Robin Steneck recovered the duffel bag. The detective processed the duffel bag in her truck (Steneck 65). As described in more detail in respondent's declaration in opposition to the petition, the duffel bag contained various items, including a long coat, a single face mask loose in bag, a rifle, loaded with a magazine and a live cartridge in the chamber, and a discharged shell casing (Steneck 69; Jacobs 205). At trial, Detective Steneck offered no

testimony as to whether she looked into the pockets or removed anything from coat pockets when she processed evidence in her truck (*see* T. 374).

Detective Steneck marked her initials and different identification numbers on items that she found in the duffel bag. She marked "RS 23" on duffel bag, "RS12" on the single face mask loose in the bag, and "RS7" on the long coat, size 46 XL (Steneck 66-69; People's Exh. 124 [photo of duffel]; People's. Exh. 115 [photo of "RS12" mask]; People's. Exh. 107 [photo of coat]).

The items that were in the duffel bag were sent to the police lab, and then to the Office of the Chief Medical Examiner ("OCME"). On April 27, 2011, OCME sent those items to the NYPD Property Clerk at the Pierson Place warehouse in Long Island City, Queens. On May 11, 2012, the NYPD Property Clerk sent the items from Pierson Place to its Kingsland Avenue warehouse located at 520 Kingsland Avenue in Brooklyn. Those items were destroyed in Hurricane Sandy (Sgt. John Trzcinski 145-148).

OCME examined the items submitted to it, including the single face mask Detective Steneck found loose inside the bag (People's Exh. 177C, marked "2" by OCME and "RS12" by Steneck), and a mask that was within the pocket of the long coat (People's Exh. 177B, marked "1B" by OCME and unmarked by Steneck). The later face mask is denominated "second mask" by the parties in their briefing in connection with the underlying Section 2254 petition.

Elaine Wong,  who "supervise[s] Criminalists Levels II and Criminalists Level II  on their casework, . . . [does] a technical review of their work to make sure that everything  is correct . . . and testif[ies] in court when necessary (Wong 318). As reflected by her initials, "EW," Ms. Wong conducted the technical review with respect to Forensic  Biology  case file number FB11-S1608 and FB11-06979 (People's Exhs. 175A and 175B, respectively).

The mask marked "RS12" by Steneck, and labeled "Mask 2" by OCME (the mask loose in  the duffel bag), had 180.44 picograms of DNA per mircroliter, and when tested, resulted in a finding of 19 out of 30 possible alleles (People's  Exhibit 175B).  The 1B Mask (the mask in the coat pocket) had 505.232 picograms of DNA per microliter, and when tested, resulted in a finding of 30 out of 30 possible alleles (Id.). A DNA profile was generated for each mask (Wong 340-341).[3] Ms. Wong compared the DNA profile obtained from Mask 1B with defendant's DNA profile, and found  that "the numbers are the same." With respect to mask marked "RS12" by Steneck, and labeled "Mask 2" by OCME (the mask loose in  the duffel bag), Ms. Wong determined that "the numbers are exactly the same" as the other mask but some alleles were missing from "FGA as well as four other locations," and explained

---

[3]   Q. [W]ere you able to general a profile, a DNA profile from mask 1B?
A. Yes.
* * * *
Referring to Mask 2, "were you able to generate [a] DNA profile from that time?
A.  Yes. (Wong 340-341).

this "generally means . . there wasn't enough DNA to obtain a full DNA profile" (Wong 341). Although there was not a full profile, the forensic evidence was sufficient for Wong to reach two conclusions: (1) the DNA from both masks derived from a single source; and (2) within "a reasonable decree of scientific certainty," "Anton Skrine is the donor of those two mask samples" (Wong 341, 343).

In contending that counsel should have objected to the admission of the second mask, later found in the coat, petitioner misses an important aspect of how the mask was handled and stored. Fungible as the second mask may be, its provenance is not mysterious: it was stored within the pocket of a vouchered coat, an item whose chain of custody cannot be seriously challenged.

Evidence is admissible under New York law if it accurately portrays a "'relevant and material element of the case.'" *Archer v. Connell*, No. 06-CV-2961 (ARR)(LB), 2008 U.S. Dist. LEXIS 96017, at *31 (E.D.N.Y. Feb. 12, 2008) (quoting *People v. Julian*, 41 N.Y.2d 340, 342 (1977)). The party seeking to admit real evidence must show that the item "'is identical to that involved in the crime'" at issue and that no one has tampered with it. *Id.* (quoting *People v. Julian*, 41 N.Y.2d 340, 342-43 (1977)). Real evidence may consist of fungible items that are not readily identifiable and easily altered, or non-fungible items that possess unique characteristics that are not subject to undetected alteration. A chain of custody is not

necessary to establish the authenticity of a non-fungible item because the authenticity of such an item may be established by a witness's identification of it. *See Jones v. Spitzer*, No. 01-CV-9754, 2003 U.S. Dist. LEXIS 4499, at *111 (S.D.N.Y. Mar. 26, 2003) (citations omitted), *Report and Recommendation Adopted*, 2005 U.S. Dist. LEXIS 1020 (S.D.N.Y. Jan. 25, 2005), *aff'd sub nom, Jones v. Cuomo*, 254 F. App'x 6 (2d Cir. 2007) (summary order). A fungible item's authenticity may be established by a chain of custody that begins from the time the object came under the control of the police to its admission at trial. *See Jones*, 254 F. App'x 6

Not everyone "whose testimony may be relevant in establishing the chain of custody or authenticity . . . must appear in person as part of the prosecution's case." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009). And "the chain of custody requirement [need not] be extended to unreasonable limits." *People v. Julian*, 41 N.Y.2d at 343 (citing *People v. Jamison*, 29 A.D.2d 973 [2d Dept. 1968]). In *Amaro v. New York*, 40 N.Y.2d 30 (1976), for example, the Court of Appeals recognized that failure to establish a chain of custody may be excused "where the circumstances provide reasonable assurances of the identity and unchanged condition" of the evidence. *Id.* at 35. And the Court of Appeals in *Julian*, satisfied that sealed, initialed, and dated packages of cocaine and marijuana had not been altered during a three-year gap in which the packages changed location without explanation, affirmed a conviction because:

> [t]he proof indicates that after being deposited with the property clerk, the evidence was transferred to another unit of the police department, pursuant to a legitimate administrative mandate. When discovered, the drugs were found precisely where they were supposed to be, in the police narcotics laboratory. At all times, the drugs apparently remained safely under police control. That the offered items were the materials seized in defendant's apartment was confirmed by the fact that they remained within identifiable containers. Throughout the period of police custody, the packages were stored in the same suitcases into which they had initially been placed.

*Id.* at 343-44.

Moreover, even where there is a gap in the chain of custody, testimony "[may] establish circumstances providing reasonable assurances of the identity and unchanged condition" of a fungible item. *People v. Esposito*, 70 Misc.3d 74, 76 (App. Term 2d Dept. 2020) (citing *People v. Hawkins*, 11 N.Y.3d 484, 494 [2008]; *People v. Mancusi,* 161 A.D.3d 775 [2d Dept. 2018]).

That was precisely what happened here. Detective Steneck testified that she marked the long coat from the duffel bag as "RS7" and photographed it (Steneck 65-67; see People's Exhs. 107, 108); Sergeant Trzcinski, the property clerk, testified that the long coat remained in police custody as it was vouchered, forwarded to the police lab, and forwarded to the OCME (Trzcinski 144); and Elaine Wong, the criminalist, testified that it was received by OCME with the original "RS7" label and the exact same appearance, and that the second black mask was "inside the left outside pocket of the . . . brown long coat" (Wong 330, 332-33; *see* People's Exh. 176A

16

[photograph]). These are no doubt "reasonable assurances of … identity and unchanged condition" as contemplated by *Jamison, Julian,* and *Esposito.*

Petitioner does not contend that these procedures were insufficient to ensure the authenticity of the long coat – or, for that matter, any of the other items recovered from within the duffel bag.

Of course, the fact that the complained-of mask was only one of two masks from which a matching profile had been constructed (Wong 331, 335, 341) puts the lie to the notion that petitioner even could have been prejudiced by his attorney's omission. As Wong explained at trial, the DNA from both masks derived from a single source (Wong 341), and within a reasonable decree of scientific certainty, Wong determined that "Anton Skrine is the donor of those two mask samples" (Wong 341, 343). This Court may dispose petitioner's claim on the ground of lack of sufficient prejudice without the need to determine whether counsel's performance was deficient. *See Strickland*, 466 U.S. at 697.

**D.**

The Appellate Division's rejection of petitioner's claim that trial counsel was rendered ineffective by failing to object to testimony of OCME Criminalist Elaine Wong's testimony on confrontation grounds, was not contrary to, or an unreasonable application of, clearly established Supreme Court law. This claim fails because, as the Appellate Division correctly concluded, "[t]he alleged error involves an issue

17

which was not so clear-cut and dispositive at the time of the [petitioner's] trial that no reasonable defense counsel would have failed to assert it." *People v. Skrine*, 201 A.D.3d 745 (2d Dept.) (citations and internal quotation marks omitted), *lv. denied,* 38 N.Y.3d 954 (2022).

The Confrontation Clause generally prohibits the admission at trial of testimonial statements made by a non-testifying witness against the defendant unless the witness is unavailable and the defendant "had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

The closest Supreme Court decision on point is *Williams v. Illinois*, 567 U.S. 50 (2012). In that case, a state DNA expert testified that DNA found on a rape victim's vaginal swab matched the defendant's DNA. *Id.* at 61-62 (plurality opinion). The defendant challenged the state expert's testimony as a violation of the Confrontation Clause because the DNA profile from the victim's vaginal swab was developed by an outside lab and the testifying expert did not participate in or observe the outside lab's work. *Id.* at 59-61. The Supreme Court rejected the defendant's Confrontation Clause challenge in a plurality opinion authored by Justice Alito, joined by the Chief Justice, Justice Kennedy, and Justice Breyer, who authored his own concurrence, and Justice Thomas filed an opinion concurring in the judgment. *Id.* at 55, 84-86; *Id.* at 102-03 (Thomas, J., concurring).

*Williams* is of no help to petitioner here. As the Second Circuit Court of Appeals has explained, *Williams* did not clearly establish any Confrontation Clause rule governing the admission of lab reports through testimony by a forensic expert who did not create the reports. *See Washington v. Griffin*, 876 F.3d 395, 406-07 (2d Cir. 2017); *see also United States v. James*, 712 F.3d 79, 91 (2d Cir. 2013) ("The [Williams] Court came to no clear consensus as to what constituted a testimonial statement in this context . . . ."), *cert. denied*, 572 U.S. 11234 (2014). The petitioner therefore cannot rely on *Williams* to argue that he is entitled to a writ of habeas corpus under the AEDPA standard. *See Harrington*, 562 U.S. at 101.

Furthermore, neither *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), nor *Bullcoming v.New Bullcoming v. New Mexico*, 564 U.S. 647 (2011), cited by petitioner, support that trial counsel was ineffective for not objecting to Wong's testimony on confrontation grounds.

In *Melendez-Diaz,* the Supreme Court, applying the holding of *Crawford*, held that certificates of the results of scientific testing of controlled substances recovered from the defendant could not be admitted at trial under the confrontation clause. At trial, the state had "submitted three 'certificates of analysis' showing the results of the forensic analysis performed on the seized substances," reporting that weight of those substances, and concluding that they contained cocaine. *Id.* at 308. "The certificates were sworn to before a notary public by analysts" at the state

19

laboratory, and were subsequently admitted over the defendant's objections." *Id.* 557 U.S. at 308-309.

A five-member majority, relying upon two distinct rationales, held that the certificates were improperly admitted. First, the Court concluded that the certificates were affidavits, squarely within the "core class" of testimonial statements that the framers intended to exclude under the confrontation clause. The Court noted that its prior descriptions of "core testimonial statements" in *Crawford*, 541 U.S. 36, twice included the term "affidavit," and the Court observed that the certificates in *Melendez-Diaz* were, in fact sworn, notarized affidavits admitted to prove a fact in dispute. The Court therefore concluded that the "analysists' affidavits" were clearly testimonial in nature and were inadmissible, in the absence of prior confrontation and a showing that the witness was unavailable.

Second, the opinion noted that the documents were not only made with the knowledge that they might be used at trial, but that the sole purpose of the documents under Massachusetts law was to provide prima facie evidence of the nature and weight of the substance that the defendant was charged with possessing. The analysts were undoubtably aware of this fact, as it was printed on the certificates themselves. *Id.* at 311. These facts provided further proof that the

statements were testimonial in nature and therefore inadmissible, absent testimony from the analysts.

The twin rationales behind the Court's holding, however, are limited by the concurring opinion by Justice Thomas, who provided the fifth vote for the Court's majority. In his concurrence, Justice Thomas adopted only the Court's first rationale, that the certificates were affidavits and thus clearly within the ambit of the formalized testimonial materials that the framers intended to preclude. He concurred separately to explain that he continued to adhere to his view that the "'Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" *Id.* at 329 (Thomas, J., concurring) (quoting *White v. Ill.*, 502 U.S. 346, 365 (1992)) (Thomas, J., concurring). Thus, Justice Thomas joined "the Court's opinion . . . because the documents at issue" were "quite plainly affidavits" and fell "within the core class of testimonial statements government by the Confrontation Clause." *Id.* at 330 (internal quotations marks omitted).

And, because Justice Thomas's vote was necessary for the majority in *Melendez-Diaz,* and because it was decided on narrower grounds than stated in the main opinion, that decision has precedential effect only under the rationale stated in Justice Thomas's concurrence. As the Supreme Court explained in *Marks v.*

*United States*, 430 U.S. 188 (1977), "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as the position taken by those Members who concurred in the judgment on the narrowest grounds . . . .'" *Id.* at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). Thus, the holding of *Melendez-Diaz* only precluded from trial only sworn statements of fact made out of court for the purpose of introduction as evidence at trial. In the case at bar, the two lab reports introduced into evidence simply contain a business record certification and not a sworn certification attesting to the accuracy of each forensic biology file.

Following *Melendez-Diaz,* the Supreme Court decided the case of *Bullcoming v. New Mexico*, 464 U.S. 647 (2011). In *Bullcoming*, the Supreme Court held that a certified laboratory report, containing the results of a blood-alcohol-test, could not be introduced into evidence through the testimony of a second analyst "who was familiar with the device used to test the blood and the lab's procedures but did not observe the test [at issue] or *have an 'independent opinion'* concerning the [results], was insufficient to cure the [Confrontation Clause] problem." *Washington v. Griffin*, 876 F.3d at 405 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 662-63 (2011)) (emphasis added). In petitioner's case, Ms. Wong, performed her own independent analysis, by conducting her own "technical review"

"to be sure that everything is correct," as opposed to merely serving as a conduit for the conclusion of others (Wong 317-18, 340-41).

The petitioner's argument in this case is even weaker than a direct Confrontation Clause claim like those at issue in *Bullcoming*, and *Melendez-Diaz*. The petitioner rests his argument here on the contention that his trial counsel was ineffective in not raising a Confrontation Clause objection to Ms. Wong's testimony. But the decisions of his trial counsel are entitled to deference. *See Lopez v. Ercole*, No. 09-CV-1398, 2014 U.S. Dist. LEXIS 9685, at *43 (S.D.N.Y. Jan. 27, 2014), affirmed, 588 Fed. Appx. 39 (2d Cir. 2014) (summary order). When applying AEDPA deference to an ineffective assistance of counsel claim, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Rosario*, 601 F.3d at 123 (alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). And the decision of the Appellate Division denying the ineffective assistance claim is to be overturned only if it is an unreasonable application of clearly established law by the Supreme Court. The petitioner has not met this "doubly deferential" standard. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The petitioner has failed to point to any clearly established law holding that counsel provides ineffective assistance when counsel fails to lodge a Confrontation Clause challenge to forensic testimony in this

context, particularly in light of the uncertainty of the underlying law on the Confrontation Clause. The Appellate Division's rejection of petitioner's ineffective assistance of trial counsel claim therefore was not unreasonable. *See Id.* ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.").

In the case at bar, trial counsel would have no basis to object to Wong's testimony under *People v. Brown*, 13 N.Y.3d 332, 339 (2009). which was the controlling New York State case dealing with the application of the confrontation clause to the admission of DNA evidence at the time of petitioner's trial in March 2014. In *Brown*, the New York Court of Appeals ruled that, "where the technicians who performed [a DNA analysis] test did not testify at trial . . . [their] reports were not 'testimonial,' because the technicians merely recorded neutral  testing procedures  and the  'graphical DNA  test results, standing along,  shed no light on the guilt of the accused in the absence of an expert's opinion that the results genetically match a known sample'" 13 N.Y.3d at 339 (quoting *People v. Meekins*, 10 N.Y.3d 136 (2008)).  Because "such an expert did testify at the trial,' the Court in *Brown* held that the defendant's Sixth Amendment rights were not violated since the expert had "personally examined the [DNA reports in the] file; she interpreted the profile of the data represented in the machine-generated graphs; . . . she  made the critical determination linking defendant to this crime[;] " and "[s]he also stated that

she was familiar with the procedures and protocols used [in generating the report]."
Id. at 339-40.

Counsel would have no basis to object to Wong's testimony even under the
Court of Appeals' decision in *People v John,* 27 N.Y.3d 294 (2016), which post-
dated petitioner's trial by two more years. In *John*, the Court of Appeals held that,
where a DNA laboratory report is testimonial in nature, "an analysis who witnessed,
preformed or supervised the generations of the defendant's DNA profile, or who
used his or her independent  analysis on the raw data  . . . must be available to
testify." 27 N.Y.3d at 315. Here, as stated supra at 13, Wong, "supervise[s]
Criminalists Levels II and Criminalists Level II on their casework, . . . [and does] a
technical review of their work to make sure that everything is correct" (Wong
318). As reflected by her initials, "EW," Wong conducted the technical  review
with respect to Forensic Biology case file number FB11-S1608 and FB11-06979,
People's Exhs.175A and 175B, respectively, and generated DNA profiles (Wong
340-341). Thus, Wong's testimony would have been admissible at trial even if
counsel had predicted the change in the law effectuated by John. Of course,
because "[c]ounsel is not required to forecast changes in governing law," *Mayo v.
Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), counsel would have not been
ineffective for failing to  object to Wong's testimony on the grounds argued in
John even if the court's reasoning in that case would have supported a different

result. *Cf. Paulino v. United States*, Nos. 97-CV-2107 and 95-CR-115, 1998 U.S. Dist. LEXIS 5966, *13 (S.D.N.Y. Apr.  28, 1998) ("A defendant is entitled to a competent lawyer, not an omniscient one."); *Marino v. United States*, Nos. 97-CV-184 and 89-CR-341, 1997 U.S. Dist. LEXIS 18079, at *9 (S.D.N.Y. Nov. 17, 1997) ("Counsel's failure to  predict a change in the law does not constitute a performance falling below objectively reasonable professional standards."); *accord United States v. Choudhry*, 330 F. Supp. 3d 815, 856 (E.D.N.Y. 2018) (collecting cases).

Finally, even if petitioner could somehow demonstrate that his trial attorney's failure to object to Wong's testimony on confrontation grounds was objectively unreasonable and constituted deficient performance, his ineffective claim would still fail because he cannot demonstrate that he suffered any prejudice. As noted above, the admission of Wong's testimony was unquestionably proper under prevailing precent of  the New York Court of Appeals at the time of the trial, and therefore petitioner would  not have succeeded in excluding that testimony had he raised a timely objection.

As the Appellate  Division found, the alleged error involves an issue that was not "so clear-cut and dispositive" that "no reasonable defense counsel would have failed to assert it." *People v. Skrine,* 201 A.D.3d at 745 (citations omitted).

**E.**

Finally, petitioner contends that trial counsel was ineffective because she failed to object to improper testimony and evidence regarding the clothing worn by the defendant at time of his arrest. The Court may dispose of this claim on the ground of lack of sufficient prejudice. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The Appellate Division's finding that counsel's failure to object "was not sufficiently egregious and prejudicial as to compromise  the  [petitioner's] right to a fair trial" (*see People v. Skrine,* 201 A.D.3d at 745 (citation omitted)), was not contrary to, or an unreasonable application of clearly established Supreme Court law.

Before trial, petitioner moved to suppress all evidence seized from his  person at the time of his arrest. At the pre-trial *Mapp* hearing, Police Officer Jeffrey Anderson[4] testified, inter alia, that when he stopped defendant on the night in question, defendant was wearing black jeans; a black jacket, black, muddy sneakers; and a New York Yankees cap (Anderson H 26). And when Police Officer Anderson arrested defendant, he recovered $900 cash, a quantity of counterfeit currency, a passport, and a birth certificate (Anderson H30-31). In a Decision and Order, dated July 17, 2013, the court suppressed "physical evidence from defendant's

---

[4] At the time of the trial, Anderson was a detective.

person (i.e., the counterfeit currency and identification cards)." [5]

Pursuant to a motion in limine, the trial court permitted the prosecutor to elicit testimony from Anderson about what the officer saw defendant wearing when he encountered him near the murder scene (T. 156). *See People v. Watkins*, 40 A.D.3d 290, 290 (1st Dept. 2007) ("The officer's testimony about what he saw defendant wearing immediately before the initial stop, and prior to any allegedly illegal police conduct, was not suppressible."). At trial, Anderson testified that petitioner was wearing a dark jacket, black jeans, a Yankee baseball cap, and muddy shoes when Anderson encountered him on the night in question (Anderson 192-93). And Anderson indicated that petitioner was approximately 6"5" (Anderson 194).

Through Detective Steneck, without objection, the prosecutor introduced photos of defendant at the precinct after his arrest (Steneck 72-73). And, without objection, the detective also introduced photographs of the articles that defendant was wearing, including, a size 4 XL black jacket, a pair of size 13 shoes; size W38 jeans, black shorts, a size double XL gray sleeveless T-shirt; and a size 6 XL long black sleeve shirt (Steneck 76-78).

---

[5] Counterfeit currency, identification cards, a passport, and a birth certificate were not introduced into evidence at trial.

Given that Officer Anderson's trial testimony established what petitioner was wearing when he saw him, and the fact that the prosecutor offered no forensic evidence tying the clothes that petitioner was wearing to the murder scene, petitioner has failed to demonstrate that there is a reasonable probability that, but for the admission of those photographs, the result of the proceeding would have been different. The Appellate Division's finding that counsel's failure to objection was not sufficiently egregious and prejudicial as to compromise the petitioner's right to a fair trial, is entitled to deference. *See Barnette v. Superintendent of E. Corr. Facility, 21-CV-2596*, 2023 U.S. Dist. LEXIS 221995 (E.D.N.Y. Dec. 13, 2023). ("substantial deference [is] due to the state court's finding that petitioner was not prejudiced by any ineffective assistance of his trial counsel."

\* \* \* \*

In sum, defense counsel ably defended her client in a circumstantial evidence case in which that circumstantial proof was, indeed, overwhelming. None of the conduct claimed to evince ineffectiveness did anything of the sort. Habeas relief is unwarranted.

29

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the petition for a writ of habeas corpus

Respectfully submitted,

*/s Thomas B. Litsky*

_____
THOMAS B. LITSKY (TL-8976)
Assistant District Attorney

MICHAEL E. McMAHON
District Attorney Richmond County
Attorney for Respondent
130 Stuyvesant Place
Staten Island, New York 10301
Thomas.Litsky@rcda.nyc.gov
(phone) 718-556-7120
(fax) 718-556-7100

Dated: Staten Island, New York
      December 19, 2023